**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MINERVA GOO** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 5858 |
| | ) | |
| v. | ) | |
| | ) | |
| **CAROLYN COLVIN** | ) | Magistrate Judge Daniel G. Martin |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Minerva Goo ("Plaintiff" or "Goo") seeks judicial review of a final decision of Defendant Carolyn Colvin, the Commissioner of Social Security ("Commissioner"). The Commissioner denied Plaintiff's application for disability benefits and supplemental security income benefits under Title II and Title XVI of the Social Security Act in a November 26, 2013 written decision of Administrative Law Judge ("ALJ") James Wascher. Goo appealed the ruling to this Court and filed a Motion for Summary Judgment that seeks to reverse the Commissioner's decision. The Commissioner has filed a cross-motion.

## I. Legal Standard

### A. The Social Security Administration Standard

In order to qualify for disability benefits, a claimant must demonstrate that he is disabled. An individual does so by showing that he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 4243(d)(1)(A). Gainful

activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. *See* 20 C.F.R. § 404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. § 404.1520(a)(4)(i). It then determines at Step 2 whether the claimant's physical or mental impairment is severe and meets the twelve-month durational requirement noted above. 20 C.F.R. § 404.1520(a)(4)(ii). At Step 3, the SSA compares the impairment (or combination of impairments) found at Step 2 to a list of impairments identified in the regulations ("the Listings"). The specific criteria that must be met to satisfy a Listing are described in Appendix 1 of the regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a Listing, the individual is considered to be disabled, and the analysis concludes; if a Listing is not met, the analysis proceeds to Step 4. 20 C.F.R. § 404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines his exertional and non-exertional capacity to work. The SSA then determines at the fourth step whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id.* If the claimant cannot undertake past work, the SSA proceeds to Step 5 to determine whether a substantial number of jobs exist that the claimant can perform in light of his RFC, age, education, and work experience. An individual is not disabled if he can do work that is available under this standard. 20 C.F.R. § 404.1520(a)(4)(v).

**B.  Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court.  Judicial review of an ALJ's decision is governed by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts or by making independent credibility determinations.  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions.  *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).  This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).  Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence.  *Elder*, 529 F.3d at 413 (citation omitted).

## II.  Discussion

Goo claims that she is unable to work due to back and neck pain, migraine headaches, and anxiety.  Following the familiar five-step analytic process, ALJ Wascher found at Step 1 that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of February 15, 2010 through April 1, 2012.  She became employed full-time at that point and continued to work through the hearing date.  The ALJ concluded at Step 2

that she suffered from the severe impairments of degenerative disc disease, scoliosis of the lumbar spine, cervical spine disc herniations, migraine headaches, anxiety disorder, communication disorder, and alcohol dependence. The last impairment was in remission at the time of the administrative hearing and written decision. The ALJ said at Step 3 that none of these impairments met or medically equaled a listing either singly or in combination.

Before moving to Step 4, the ALJ assessed Goo's residual functional capacity ("RFC") as the ability to carry out light work, as long as various exertional and non-exertional restrictions were implemented. He also assessed Plaintiff's credibility concerning the severity and frequency of her symptoms. The ALJ found that Goo was only partially credible. He further stated that great weight should be given to the opinions of various state agency physicians. These included a physical RFC assessment of non-examining expert Dr. Charles Wabner, and a Psychiatric Review Technique and mental RFC assessment given by Dr. Leon Jackson. Based on these findings, the ALJ concluded at Step 4 that Goo was unable to perform any of her past relevant work. Relying on the testimony of a vocational expert ("VE"), the ALJ thought that jobs existed in the national economy that Goo would be able to perform given her RFC. He therefore concluded that she was not disabled.

Goo challenges the ALJ's decision on grounds that are not easily disentangled from one another. The Court interprets her motion to claim that ALJ Wascher failed to properly (1) obtain a waiver of counsel and develop the record, (2) assess her RFC, and (3) address

the issues relevant to Step 5.[1]  The Court addresses each issue in turn.

## A.    The Representation Issue

Goo was represented at the administrative hearing by her sister, who is a paralegal,

instead of by an attorney.  Disability claimants have a statutory right to be represented at

an administrative hearing, either by an attorney or a non-attorney.  *See* 42 U.S.C. § 406(c);

20 C.F.R. § 404.1706.  The right to have an attorney present at the hearing can be validly

waived in the Seventh Circuit if the ALJ explains to the claimant: (1) how an attorney can

aid in the proceedings, (2) the possibility of free or contingency-based representation, and

(3) the limitation on attorney's fees to 25% of the past due benefits and the need for

approval of the fees.  *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (citing *Thompson*

*v. Sullivan*, 933 F.3d 581, 584 (7th Cir. 1991)).  An ALJ must ensure that the claimant is

aware of her representation right, and that she has validly waived it.  Even if a claimant is

represented by counsel, an ALJ has a duty to develop a full and fair record.  *See Smith v.*

---

[1]  Plaintiff makes fleeting complaints about the ALJ's credibility assessment.  She states, for example, that he drew a negative inference from her lack of sustained medical treatment.  Such sporadic complaints fall far short of a challenge to the credibiltiy analysis that the Court can address.  *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1992) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (stating that arguments are waived when "underdeveloped, conclusory, or unsupported by law"); *White v. Colvin*, 2015 WL 1969636, at *2 n.2 (S.D. Ind. May 1, 2015) ("The Court will not  address such skeletal arguments.").  The government notes in its own motion that Plaintiff is silent on the credibility issue.  Goo does not disagree with that claim in her reply.

Plaintiff's motion also violates Local Rule 5.2(c), which requires that line spacing be at least 2.0 lines, and that footnotes be typed in "no less than 11 points."  Plaintiff's opening brief includes 28 footnotes that are single-spaced and typed in print so small that they challenge all but the sturdiest of eyes to read them.  Plaintiff's counsel is directed to remedy these oversights in all future briefs submitted to this Court.

*Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). "This duty is enhanced when a claimant appears without counsel; then the ALJ must scrupulously and conscientiously [ ] probe into, inquire of, and explore for all the relevant facts." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (internal quotes and citation omitted).

ALJ Washer did not address any of the statutory or judicially-created representation requirements at the hearing. Nor did he make any inquiry into whether Goo even knew that she had a right to be represented by an attorney. The Commissioner argues that does not matter because Goo was represented by her sister. The government claims that "there is simply no legal precedent . . . that an ALJ must treat claimants who are represented by a non-attorney as if they had no representation at all." (Dckt. 19 at 2). That is not the case, at least insofar as it concerns the ALJ's duty to ensure a valid waiver of counsel. "In fact, district courts in this circuit have concluded that the ALJ cannot presume a waiver of the right to counsel simply because the claimant appears with a non-attorney representative." *Beth v. Astrue*, 494 F. Supp.2d 979, 1001 (E.D. Wis. 2007) (internal quotes omitted) (citing *Koschnitzke v. Barnhart*, 293 F. Supp.2d 943, 947 (E.D. Wis. 2003)). As *Beth* states, "the Seventh Circuit has made clear that the statutory right, which may be intelligently waived, is not simply to representation, but representation by a lawyer." *Id.* at 1000-01. *See also Watkins v. Colvin*, 2014 WL 683849, at *14 n.16 (N.D. Ind. Feb. 21, 2014); *Stepro v. Astrue*, 2012 WL 967089, at *2 (S.D. Ind. March 21, 2012) (both disagreeing with the Commissioner's position). The Commissioner has failed to cite any of these cases, and has made no attempt to explain why their reasoning does not apply here.

Instead, the government claims that the ALJ's silence on the issue was not erroneous because *Thompson* and *Binion*, *supra*, can be satisfied in another way. The

government points out that § 406's requirements were changed in 1991 after *Thompson* was issued. The statute now requires the SSA to give claimants written notice of their right to representation. The Commissioner did so in this case by means of an August 22, 2012 letter. Although the Commissioner fails to address the letter's content, it informed Goo of each of the three judicial notice requirements set out by the Seventh Circuit in *Thompson*. It stated that she had the right to be represented by either an attorney or a qualified non-attorney; that the representative would be able to take specific actions in aiding the claimant's case;[2] that certain organizations could assist the claimant in finding a representative for free or on a contingency basis; and that a fee agreement would be limited to 25% of past due benefits, subject to subsequent approval. (R. 100-06).

It is not fully settled whether such letters can satisfy a disability claimant of her right to be represented by counsel. The Seventh Circuit has not addressed the issue directly, though at least two circuits have held that a § 406 letter is sufficient. *See Roberts v. Comm. of Soc. Sec.*, 644 F.3d 931, 934 (9th Cir. 2011); *Lamay v. Comm. of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009). Lower courts in this district have found that a statutory notification like the one issued in this case can adequately inform a claimant of her right to counsel, as long as it goes beyond the more restricted notice criteria set out in the statute itself and addresses all the factors required by the Seventh Circuit in cases like *Thompson*.

---

[2] The notice did not distinguish between what an attorney and a non-attorney could do for a claimant. It merely laid out six areas in which a "representative" could be helpful. (R. 103). Section 406(c) does not require the Commissioner to address this issue in the written notice. Thus, the Commissioner's August 22, 2012 letter went beyond the more limited requirements of § 406(c) to include the judicially-created elements set out in cases like *Thompson*, *supra*. *See Smith v. Astrue*, 795 F. Supp.2d 748, 758 (N.D. Ill. 2011) ("The statutory notice requirement thus mandates a more limited written disclosure [than *Thompson* requires], to accompany the notice of adverse decision.").

In *Moore v. Astrue*, 851 F. Supp.2d 1131, 1141 (N.D. Ill. 2012), for example, an ALJ informed a claimant of her *Thompson* rights except for the limitation of attorney's fees to 25% of past due benefits. Magistrate Judge Cole found that the claimant's waiver of counsel at the hearing was nonetheless valid because she was sent the same kind of statutory notification letter that Goo received in this case. The letter informed claimant about the attorney's fee issue. Judge Cole reasoned that since "the Seventh Circuit did not say that any written notice would be insufficient, presumably one that met all their [judicial] requirements would pass muster." *Id*. *Moore*, however, requires more than the issuance of such a letter to the claimant. The Commissioner's compliance with the statute must also be "combined with a signed and returned acknowledgment of receipt" by the claimant. *Id*. Common sense suggests that a claimant cannot be informed of her representation rights if she never received the Commissioner's letter.

The problem in this case is that the record does not contain the kind of signed receipt that was present in *Moore*. The Court is unable to locate such a receipt; the Commissioner has not cited it; and Plaintiff overlooks the matter altogether. This raises serious concerns about the validity of Goo's alleged waiver of her right to counsel: How could she have waived a right she was never told she had? Those concerns are heightened by the fact that Goo chose to be represented by a non-attorney long before the Commissioner even sent the August 22, 2012 letter. On February 14, 2012, she completed SSA Form 1696-U4 that appointed her sister as her representative. (R. 89). A July 24, 2012 communication between the SSA and Plaintiff also states, "I am represented by Maria Osoria-Cartage, who is not an attorney." (R. 98). Goo then filled out another Form 1696-U4 on August 7, 2012 stating once more that her sister represented her. (R. 99). Each of

these official communications between Plaintiff and the SSA predates the Commissioner's notification letter. Plaintiff may or may not have chosen her sister if she had known that she had a right to an attorney, and that organizations existed that could help her obtain one. But the fact that she made her choice up to six months before the SSA sent the August 2012 letter – a fact that the ALJ should have known – combined with the absence of evidence that Goo received that letter – which the ALJ should also have known – precludes a finding that the letter can be construed as adequate notice of the *Thompson* factors. The Court therefore disagrees with the Commissioner that Goo validly waived her right to counsel.

That said, the absence of a proper waiver does not itself automatically require remand. It "merely heightens [the ALJ's already-existing] duty to develop the record." *Coleman v. Astrue*, 661 F. Supp.2d 1016, 1024 (S.D. Ind. 2009). After careful consideration, the Court finds that ALJ Wascher sufficiently developed the record in this case to satisfy his obligation. He took several steps to ensure that it reflected adequate information about Goo's medical condition. The ALJ offered to subpoena medical records from Plaintiff's treating physician when the representative had been unsuccessful in doing so on her own.[3] He also expanded the sparse medical record by ordering two consulting exams of the Plaintiff from Dr. Donald Pochyly and psychologist Dr. Patricia Morrin. That

---

[3] Goo does not argue that her non-attorney representative was so ineffective that the invalid waiver requires remand. *See Beth*, 494 F. Supp.2d at 1001-02. The ALJ inquired into the qualifications and experience of Plaintiff's counsel, who had appeared once before at a disability hearing. (R. 42). The representative showed familiarity with Step 3 listing issues, as well as the Paragraph A, B, and C requirements for mental disorders. She examined Plaintiff at some length at the hearing and made a substantial opening statement to the ALJ.

was particularly important because Goo failed to submit any opinion from her treating physician. The ALJ did not have a medical expert present at the hearing, but Plaintiff does not allege that he should have done so. In fact, Plaintiff makes little complaint about the ALJ's handling of the medical record at all.

Goo claims instead that he did not question her or the VE sufficiently at the hearing. She argues, for instance, that the ALJ did not adequately inquire into issues such as her headaches. The Court disagrees. The ALJ asked about the frequency and severity of Goo's migraines and the effect they had on her ability to work at her current job. He also looked into her activities of daily living ("ADLs"), exertional abilities, and her job duties. Goo also complains that the ALJ did not ask the VE to describe vocational problems that might stem from her social limitations. But having found that Goo experienced moderate limitations in social functioning, the ALJ included social limitations in the RFC and asked the VE to consider a hypothetical individual who was limited to "brief superficial interactions with coworkers." (R. 74). It is true that the ALJ might have been more detailed in his questions at the administrative hearing, especially in light of his heightened duty to make sure that he explored all of the relevant evidence. However, Plaintiff has not identified any specific question that, had the ALJ asked it, would have led him to reach a different conclusion. She does not even allege that the ALJ would have learned of any relevant information had he done so.

That makes it is difficult to understand the basis of Goo's complaint. She states that the ALJ should have obtained confirmation from her employer that she had been reprimanded several times at her current job. But Goo clearly gave the ALJ that very information at the hearing. Why would getting "confirmation" from her employer have

added anything to her own testimony? The ALJ did not discredit her testimony on that issue. Plaintiff does not explain what it was that the ALJ would have learned, or why it would have provided the ALJ with relevant facts. Goo also claims that the ALJ should have looked into the fact that she had a high rate of absenteeism at her current job. Once more, however, the ALJ was fully aware of Goo's absences; she told him that she had missed seven to eight days of work from January through July 2013. The ALJ accepted that testimony and took proper note of it in his decision. Contacting Goo's employer would not have added any information that the ALJ did not already have. If that were not the case, then Plaintiff should explain what it was that the ALJ would have learned had he taken an even greater role in developing the record. She is silent on the issue. Under these facts, therefore, the government has carried its burden of showing that the ALJ adequately developed the record. The Commissioner's motion is granted on the representation topic.

**B.    The RFC Issue**

Plaintiff further claims that substantial evidence does not support the ALJ's RFC. He stated that Goo had the capacity to carry out light work, "except that she could only occasionally stoop or crouch; she is moderately limited in her ability to maintain concentration, persistence or pace, and therefore is limited to performing simple, routine tasks with only brief, superficial interactions with coworkers."[4]  (R. 24).

Goo contends that the ALJ's RFC is erroneous because he did not properly assess her migraine headaches. She notes, for example, that she told the ALJ that she had

---

[4]  The ALJ's second hypothetical question to the VE, which is described below, incorporated these mental restrictions. The Court treats Plaintiff's challenge to this hypothetical together with the RFC.

headaches two to three times a week that required her to lie down. What she does not explain is why that required a more restrictive RFC. The ALJ dutifully noted Goo's testimony concerning the frequency of her headaches. (R. 25). He did not believe that her allegations necessitated greater RFC restrictions, in part, because he did not think that Goo was entirely credible in what she said. For reasons that are unclear, Plaintiff does not challenge the ALJ's credibility analysis. That means that Goo has the burden of showing why substantial evidence does not support the ALJ's RFC assessment even though she essentially concedes that he was correct in finding that she was not fully credible in her descriptions of the severity and frequency of her symptoms.[5]

Her testimony on the frequency of her headaches does not carry that burden. The ALJ had good reason to refrain from adding greater work limitations merely because Goo said that she had two to three headaches a week that would prevent her from working: She was *already* working at the time of the hearing. The fact that she told the ALJ that she had missed about one day a month is unavailing. Goo did not explain then, and she is silent now, as to why she would only have missed that number of days if – as she claimed – her debilitating headaches actually occurred up to three times a week. That suggests that Goo would have missed between 48 and 72 days of work between January to July 2013.

Plaintiff also notes that her treating physician Dr. Odeh filled out a form stating that

---

[5]  At the time of ALJ Wascher's decision, credibility was assessed pursuant to SSR 96-7p. However, the SSA has recently updated its guidance about how to evaluate symptoms in disability claims by issuing SSR 16-3p. The new Ruling eliminates the term "credibility" from the SSA's sub-regulatory policies to "clarify that subjective symptoms evaluation is not an examination of the individual's character." SSR 16-3p.

"she might need up to 48 hours monthly FMLA leave for her medical conditions including migraines." (Dckt. 12 at 8). But Goo presents no argument on why the ALJ's RFC was erroneous based on the doctor's note. Dr. Odeh's form is dated January 12, 2008 – two years before Goo's alleged onset date of February 15, 2010. Contrary to Plaintiff's allegation, Dr. Odeh did not say that Plaintiff would need 48 hours of FMLA leave "monthly" for headaches. He said that she needed from one to 48 hours for a course of treatment that would not require "additional appointments." (R. 349). That means that Dr. Odeh thought that Goo would only need one block of leave time, not ongoing absences of 48 hours each month. Goo has presented no evidence that the kind of treatment that Dr. Odeh addressed in 2008 was still necessary in during her alleged disability period.[6]

The ALJ implicitly noted that fact by pointing out that Goo had received minimal care for her impairments. She only consulted her primary care physician, and even then only saw him four times from her onset date through April 2012. (R. 25). The ALJ reasonably concluded that such minimal treatment did not support her disability claim. But he laid the greatest stress on the fact that Goo had been working full time prior to her alleged onset date and had again been working full time since April 2012. The ALJ emphasized Goo's testimony that her condition had grown worse over time, reasoning that if she could work now when her condition was worse, then she could have worked from February 2010

---

[6] Goo mistakenly relies on *Moore v. Colvin*, 743 F.3d 1118 (7th Cir. 2014) to rebut the ALJ's RFC assessment. In *Moore*, the ALJ fashioned the RFC by erroneously discounting the a treating neurologist's finding that the claimant suffered from "continuous unremitting headaches." *Id.* at 1127. He also failed to properly assess the credibility of statements made by the claimant and her mother. Neither of these conditions exists in this case. Goo did not submit a medical opinion from any medical expert. Nor does she challenge the ALJ's finding that she was not entirely credible.

through April 2012 when it was better. (R. 26, "[A] reasonable inference . . . is that the claimant's impairments would not have prevented work from February 2010 through April 2012."). Plaintiff provides no reasonable explanation of why that conclusion was erroneous. She approaches the topic by claiming that the ALJ overlooked a written statement she made alleging that she had stopped working in 2010 "because of my condition(s) and other reasons." (R. 173). But there is no evidence that Goo, in fact, stopped working and sought disability benefits because of her migraine headaches. To the contrary, Goo did not voluntarily stop working at all. The ALJ noted that she was fired in 2010 for being rude to a customer. She then filed a wrongful termination suit and began looking for other work. The ALJ inferred this meant that Goo could continue to work. As noted, she was also working at the time of the administrative hearing. An ALJ may rely on a claimant's work history during the alleged disability period to find that she is not disabled. *See Schmidt v. Barnhart*, 395 F.3d 737, 745 (7th Cir. 2005) ("[T]he ALJ reasonably relied upon the fact that Schmidt had, during the relevant time period, been employed for four continuous months doing data entry and had lost his job not due to an inability to perform, but rather due to a decreased workload resulting in layoffs.").

The Court recognizes that an ALJ must approach a claimant's work history with caution. "[T]he fact that a person holds down a job doesn't prove that he isn't disabled, because he may have a careless or indulgent employer or be working beyond his capacity out of desperation." *Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003); *see also Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005); *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004). Goo does not directly broach this issue in her brief or address any of the numerous cases that are relevant to it. She does state that she struggles to hold her

current position.  However, that falls far short of demonstrating that her ability to work is conditioned on desperation, an indulgent employer, or any other fact that could bring her situation within the ambit of *Henderson* or other cases.  If she is really doing so then Goo should make that point and explain what evidence meets the standard laid out by the Seventh Circuit on the issue.  Given her silence on the matter, however, the Court cannot find that the ALJ erred by relying on her ability to work before February 2010 and after April 2012.

Plaintiff further claims that the ALJ failed to comply with SSR 96-8p's directive to "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p.  This directive in SSR 96-8p essentially calls for a credibility assessment of the claimant, as indicated by the Ruling's citation to SSR 96-7p that  formerly governed credibility assessments.  Plaintiff herself implicitly links the credibility and RFC issues by briefly citing case authority about credibility.  (Dckt. 12, 9 at n.14).  The problem with Plaintiff's argument is that she does not challenge the ALJ's finding that her "reported symptom-related functional limitations and restrictions" were not fully credible.  Her current argument can only be construed as an attempt to reintroduce the credibility topic through the back door of SSR 96-8p.   That is unavailing.  This Court is not a legal Geiger counter that must flash an alert signal every time the trace of a claim gets intermingled with other, distinct lines of argument.  If Goo intended to rely on the ALJ's consideration of her symptom claims, then she was obligated to raise the issue head on and demonstrate why substantial evidence does not support the ALJ's credibility analysis.      Goo argues more forcefully that the ALJ failed to properly account for the limitations that he thought

existed in her concentration, persistence, and pace. The RFC stated that Plaintiff had moderate limitations in these functional areas that restricted her "to performing simple, routine tasks with only brief, superficial interaction with coworkers." (R. 24). The ALJ used the same language at the administrative hearing when he submitted a series of hypothetical questions to the VE. The second hypothetical asked the ALJ to consider an individual with various exertional limitations who "would be moderately limited in the ability to maintain concentration, persistence, or pace, and therefore, would be functionally limited to performing simple, routine work involving brief superficial interactions with coworkers." (R. 74). The VE identified jobs in the national economy that he thought such a person could perform.

The ALJ said that his RFC assessment was supported by the mental health assessments of Plaintiff that had been issued by Dr. Leon Jackson and other reviewing state-agency experts. The Court describes Dr. Jackson's assessments in detail because they form the basis of Goo's challenge to the mental RFC. Like many consulting experts Dr. Jackson submitted three different forms concerning Goo's mental functioning: (1) a Psychiatric Review Technique ("PRT"), and (2) a mental residual functional capacity assessment ("MRFCA") that includes both (a) a worksheet in Section I that contains boxes related to 20 aspects of a claimant's mental functioning and (b) Section III, which asks the consultant to issue a narrative assessment of the claimant's mental functioning. Dr. Jackson's PRT said that Goo had "mild" limitations in her ADLs, "moderate" limitations in social functioning, and "mild" restrictions in concentration. (R. 574). Section 1 of the MRFCA assessed "moderate" limitations in four areas related to Goo's concentration, persistence, and pace. These include the ability to: (1) maintain attention for extended

periods; (2) perform activities within a schedule and maintain regular attendance; (3) work in coordination and proximity with others;[7] and (4) complete a normal workday/workweek without interruptions from psychological symptoms. (R. 560-61). Section III contains a narrative survey of Plaintiff's treatment, condition, and prognosis. Dr. Jackson concluded in this section that Plaintiff was "moderately impacted" by her restrictions in concentration, persistence, and pace.[8]

Goo makes three interrelated arguments as to why ALJ Wascher erred in the way he phrased the mental RFC and second hypothetical question. First, she claims that these RFC formulations erroneously restricted her to "simple, routine tasks" without accounting for her moderate restrictions in concentration, persistence, and pace. Second, she argues that the ALJ failed to build a logical bridge between parts of Dr. Jackson's analyses and the ALJ's finding that she had a moderate concentration restriction. Goo points out in this regard that Dr. Jackson said in the PRT that she only had a "mild" concentration restriction.

---

[7] As noted, the RFC and hypothetical question did limit Goo to superficial interactions with others workers. It is not clear whether that restriction was designed to address Dr. Jackson's belief that Plaintiff would have difficulties working around fellow employees without being distracted (a restriction identified under concentration and persistence) or that she would be limited in her ability to get along with others without distracting them (which fell under the category of social interaction). (R. 560-61).

[8] The term "moderate" has a specific meaning in the context of the MRFCA. The SSA instructs ALJs to choose "moderate" in Section I of the MRFCA when "the individual's capacity to perform the activity is impaired." Programs Operations Manual System ("POMS"), DI 24510.063(b)(2). It is for that reason that some courts have found that an ALJ cannot rely on a Section I worksheet to assess the mental RFC. *See Smith v. Comm. of Soc. Sec.*, 631 F.3d 632, 637 (3d Cir. 2010). "In other words, a 'moderate' limitation on the MRFCA means only that there is some limitation in the claimant's capacity to consistently and usefully perform the activity, no matter how small." *Kraus v. Colvin*, 2014 WL 1689717, at *16 (E.D. Wis. April 29, 2014). The only option for a lesser finding in Section I is "not significantly limited." In the absence of any argument on this topic by either party, the Court does not address the issue further.

The ALJ then gave "great" weight to Dr. Jackson's overall findings and essentially adopted all of the mental restrictions that Dr. Jackson noted in the MRFCA. Plaintiff argues that the ALJ could not have adopted those restrictions if he thought that Plaintiff was actually *more* restricted than Dr. Jackson said she was. Third, Plaintiff claims that the ALJ was obligated to specifically include in the RFC and hypothetical question all four of the concentration restrictions described above that Dr. Jackson checked off in Section I of the MRFCA.

An ALJ is always obligated to fashion an RFC and hypothetical questions to the VE that account for all of a claimant's restrictions that are supported by the record. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). An ALJ does not have to explicitly identify "concentration, persistence, and pace" in a hypothetical as long as her "alternative phrasing [to the VE] specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.* (noting that was the case in *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002)). Goo accurately points out that an ALJ cannot always describe an individual who is limited to simple, routine tasks. *See Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014) ("But we have repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."). That is, in essence, Plaintiff's entire point on the topic: She cites *Yurt*, *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), and a host of other cases to claim that ALJ Wascher erred by limiting her to "simple, routine tasks" without accounting for the full range of her mental restrictions in concentration, persistence, and pace.

The obvious problem with Goo's claim is that neither the RFC nor the hypothetical

in this case only limited her to "simple, routine tasks." The ALJ also said that Goo was restricted to such work *because* she is moderately restricted in concentration. (R. 24, "[S]he is moderately limited in her ability to maintain concentration, persistence or pace, and therefore is limited to performing simple, routine tasks with only brief, superficial interaction with coworkers."). That distinguishes ALJ Wascher's RFC and hypothetical from those in all of the cases that Goo relies on. Neither of the ALJs in *Yurt* or *Varga*, *supra*, incorporated a specific limitation in the RFC or hypothetical that identified the claimant's moderate limitations in concentration, persistence, or pace. They relied instead on bare-boned and often uninformative terms such as "simple," "routine," or "unskilled." The same was true in *O'Connor-Spinner*, *supra*, which Goo also cites. The plaintiff in that case alleged that the ALJ erred by submitting a hypothetical question that did not include a limitation on concentration but restricted her instead to "routine, repetitive tasks with simple instructions." *O'Connor-Spinner*, 627 F.3d at 617. Nor does Plaintiff's reliance on *Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2009) and *Craft*, *supra*, further her claim. The ALJ in *Stewart* formulated a hypothetical that referenced the claimant's ability to perform "simple, routine tasks" that did not mention his difficulties in maintaining concentration. *Stewart*, 561 F.3d at 684. In *Craft* the ALJ similarly erred by stating the RFC as involving "simple, unskilled task[s]" without identifying the claimant's limitations in concentration, persistence, and pace. *Craft*, 539 F.3d at 676-77. Indeed, Plaintiff has not cited any authority for the proposition that an RFC or hypothetical question is erroneous when it restricts a claimant to simple, routine work *and* identifies her moderate limitations in concentration, persistence, and pace. Alerting the VE to the claimant's specific mental limitations is what the Seventh Circuit requires an ALJ to do. *See O'Connor-Spinner*, 627 F.3d at 620-21 ("[T]he ALJ

should refer expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do.").

Courts have upheld RFC assessments and hypotheticals that are similar to the one at issue here. In *White v. Comm. of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009), for example, the Sixth Circuit was presented with a hypothetical stating that the claimant "needs simple repetitive work or [sic] because of a moderate limitation in [the] ability to maintain attention and concentration due to mental impairment." *Id.* at 287. As here, that restricted the claimant to simple, repetitive work because of a moderate impairment in the ability to concentrate. *White* rejected the same argument that Goo makes here, finding that the ALJ's reference to simple work was not erroneous when it also included the claimant's restriction in concentration. *Id.*; *see also Jarrett v. Comm. of Soc. Sec.*, 422 Fed.Appx. 869, 871 (11th Cir. 2011) (upholding a hypothetical citing the ability to carry out "simple . . . tasks and concentrate for brief periods of time"). The Court agrees with this reasoning. ALJ Wascher adequately accounted for Goo's moderate limitations in concentration by directing the VE to consider an individual who was "moderately limited in the ability to maintain concentration, persistence, or pace, and therefore would be functional limited to performing simple, routine work[.]" (R. 74).

Even if that were not the case, Plaintiff still fails to demonstrate that the ALJ erred. Goo implicitly assumes that Dr. Jackson's PRT, MRFCA Section I, as well as the Section III are all mental RFC assessments that are essentially interchangeable with one another. That is not the case. A consulting psychologist's PRT does not measure a claimant's

20

mental RFC. Instead, the PRT "is used to document the various steps required by the special technique [of 20 C.F.R. § 404.1520a] to evaluate a mental impairment." *Baumgartner v. Colvin*, 2013 WL 5874633, at *13 (W.D. Wis. Oct. 31, 2013). Like the special technique described in § 404.1520a of the regulations, a PRT relates to Step 2 (the severity issue) and Step 3 (the listing issue) of the five-step disability analysis; it does not concern Steps 4 or 5, where the mental RFC and hypothetical questions are at issue. *See Pingel v. Colvin*, — F. Supp.3d —, 2016 WL 235936, at *8 (E.D. Wis. Jan. 20, 2016); *Wade v. Colvin*, 2014 WL 349261, at *14 n.6 (N.D. Ill. Jan. 31, 2014) ("[A]ny attempt by Plaintiff to equate [the expert's] findings in the PRT (of [mild] limitations in concentration, persistence, or pace) with an RFC assessment is unavailing.").[9]

Section I of the MRFCA also does not measure the RFC. The SSA's Program Operations Manual System states that "**Section I is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." POMS, DI 24510.060(B)(2) (bold in original). *See Smith v. Comm. of Soc. Sec.*, 631 F.3d 632, 636 (3d Cir. 2010) (stating that Section I "does not constitute the RFC assessment but rather is merely a worksheet") (citing *Molloy v. Astrue*, 2010 WL 421090, at *11 (D.N.J. Feb. 1, 2010)); *Kraus v. Colvin*, 2014 WL

---

[9] That does not mean that the PRT is unrelated to the mental RFC, or that the ALJ can simply ignore the PRT assessment when she fashions the RFC. Many courts have found that the ALJ should consider the PRT findings notwithstanding the fact that they are not formally a mental RFC assessment. *See Winschel v. Comm. of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) ("Though the PRT and RFC evaluations are undeniably distinct . . . nothing precludes the ALJ from considering the results of the former in his determination of the latter."). The limitations noted in the PRT must be incorporated in the RFC and at Step 5 when the record supports them. *See Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003).

1689717, at *16 (E.D. Wis. April 29, 2014) (noting that "the worksheet [of Section I] is not considered an RFC assessment"). Only the narrative summary of Section III of the MRFCA constitutes the mental RFC assessment. *See* POMS, DI 24510.060(B)(4); *Capman v. Colvin*, 2014 WL 4494421, at *6 (N.D. Ind. Sept. 12, 2014) ("It is the narrative in Section III of the MRFCA that constitutes the consultant's opinion about mental functional capacity."); *Kraus*, 2014 WL 1689717, at *15-16; *Parini v. Colvin*, 2013 WL 5372344, at *6 (E.D. Wis. Sept. 24, 2013). Section III requires the expert to provide a narrative description that explains the conclusions found in Section I in terms of what functions the claimant could carry out in a work setting.

Without making any distinctions between these various forms, Goo claims that the ALJ was required as a matter of law to incorporate the four Section I restrictions noted above into his RFC and hypothetical. The Court disagrees. A number of courts have found that an ALJ is not required to look beyond the Section III narrative when she assesses a claimant's mental RFC. *See*, *e.g.*, *Smith*, 631 F.3d at 636-37; *Sullivan v. Colvin*, 519 Fed.Appx. 985, 989 (10th Cir. 2013); *Nathan v. Colvin*, 551 Fed.Appx. 404, 408 (9th Cir. 2014). The situation is more nuanced in the Seventh Circuit. *See Varga*, 794 F.3d at 816 ("This circuit has declined to adopt a blanket rule that checked boxes in Section I of the MRFCA form indicating moderate difficulties in mental functioning need not be incorporated into a hypothetical to the VE."). *Varga* stressed that Section I's checkboxes "are . . . medical evidence which cannot just be ignored." *Id.* But the Seventh Circuit also made clear that an ALJ may decline to incorporate Section I's findings if she relies instead on Section III's narrative summary – as long as the consultant's explanation "adequately encapsulates and translates those worksheet observations." *Id.* (citing *Johansen*, 314 F.3d

at 286).  How a court goes about gauging the adequacy of the Section III narrative is not entirely clear.  *See Pingel*, — F. Supp.3d —, 2016 WL 235936, at *9 (noting that the Seventh Circuit has not clarified how to assess whether the ALJ "has accurately translated his worksheet finding of a moderate limitation into the mental RFC the consultant describes in narrative form in his conclusion").  The issue did not even arise in *Varga* because Section III of the MRFCA in that case did not contain a narrative explanation.

In this case Dr. Jackson adequately translated the Section I findings into his Section III narrative.  Dr. Jackson filled out Section III of his MRFCA by concluding that Goo was "moderately impacted" in her ability to sustain concentration, persistence, and pace.  He then converted that finding into a specific mental RFC: "From a psych perspective the claimant retains the functional capacity to engage in at least simple and routine unskilled vocational activities."  (R. 562).  The ALJ did not merely interpret what Dr. Jackson meant by a moderate limitation.  He adopted the consultant's concrete finding that, given the moderate concentration limitations that were present both in Section I and the Section III narrative, Goo could still carry out simple, routine work tasks.  Since Dr. Jackson had already translated those restrictions into an RFC that matched almost word for word what the ALJ stated, those Section I limitations were already captured in Dr. Jackson's finding that Plaintiff could carry out simple, routine work.  *See Johansen*, 314 F.3d at 289 (finding that the ALJ correctly relied on a consultant's mental RFC formulation when the consultant translated his Section I findings "into a specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive work").

Having overlooked what Dr. Jackson said in the Section III narrative, Goo has not presented any contrary argument on the issue.  An RFC of simple tasks is not erroneous

when it is supported by appropriate language in the consultant's report even when (unlike here) the ALJ does not specifically reference moderate limitations in the RFC. Courts in this circuit have reached similar conclusions. *See Kraus*, 2014 WL 1689717, at *16 ("The Seventh Circuit has held that when a medical source of record translates his findings into a particular RFC assessment, the ALJ may reasonably rely on that assessment to formulate his RFC finding and hypothetical.") (citing *Milliken v. Astrue*, 397 Fed.Appx. 218, 221-22 (7th Cir. 2010)). In *Lichtsinn v. Astrue*, 683 F. Supp.2d 811 (N.D. Ind. 2010), the ALJ found that the claimant experienced moderate restrictions in concentration, persistence, and pace. The RFC, however, did not include that language; it only referred to the claimant's "unskilled simple, repetitive tasks." *Id.* at 821. *Lichtsinn* rejected the claim that an ALJ errs as a matter of law when he omits a specific reference to the claimant's concentration limitation. That is because "when a medical source of record translates his findings into a particular RFC assessment, the ALJ may reasonably rely on that opinion in formulating a hypothetical question for the VE." *Id.* In *Lichtsinn* the consulting expert fashioned a mental RFC that restricted the claimant to the same "simple, unskilled work" that the ALJ included in his own hypothetical question. *Id.* Because ALJ Wascher's RFC and hypothetical question satisfy these standards, the Commissioner's motion is granted on these issues.

### C.     The Step 5 Issue

At Step 5 ALJ Wascher asked the VE to state if any jobs existed for an individual who shared the physical and mental RFC that he assigned to Goo. The VE testified that three jobs existed: (1) an order picker (DOT 922.687-058), (2) a hand packager (DOT 920.587-018), and (3) a spiral binder (DOT 653.685-030). The VE further stated that a

significant number of these three jobs existed in the regional economy (defined here as Illinois) as follows: (1) 11,000 jobs for the order picker, (2) 10,000 jobs for a hand packager, and (3) 230 positions for a spiral binder. (R. 75). Citing a number of recent cases such as *Voight v. Colvin*, 781 F.3d 871 (7th Cir. 2015), Goo notes that the Seventh Circuit has expressed serious concerns about the sources on which ALJs and vocational experts rely when assessing the number of jobs that exist in the local, regional, or national economies. The VE in this case did not state from where she derived the job numbers that were available for Goo. The ALJ did not inquire about the issue. Vocational experts in disability cases routinely refer to the Dictionary of Occupational Titles. But the Seventh Circuit has forcefully noted that the DOT is decades out of date (having been last published in 1977), contains numerous jobs whose continued existence is seriously in doubt, and provides no official source of numbers for available jobs. *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). Goo draws on these criticisms to claim that remand is necessary because the ALJ in this case failed to inquire how the VE assessed the number of jobs that were available to her.

The Court shares Goo's concerns on this topic. However, neither *Voight* nor *Browning* was specifically decided on the issue that Plaintiff raises here. *See Fitzgerald v. Colvin*, 2016 WL 447507, at *11 (W.D. Wis. Feb. 4, 2016) (calling the Seventh Circuit's language dicta and noting that the court did not find "that the [ALJ] erred in relying on the [vocational expert's] unexplained vocational testimony and did not overrule well-established precedent allowing [ALJs] to do so"). Lower courts have reached mixed results on the topic. *See Khuzaie v. Comm. of Soc. Sec.*, 2016 WL 1253537, at *11 (N.D. Ind. March 30, 2016); *Kordeck v. Colvin*, 2016 WL 675814, at *9 (N.D. Ind. Feb. 19, 2016) (recommending

that the ALJ obtain updated job data but remanding on other grounds); *Brown v. Colvin*, 2015 WL 7294547, at *7 (W.D. Wis. Nov. 17, 2015) (stating that the Seventh Circuit "has not yet overturned an administrative law judge's denial of an appeal on that basis alone"). *But see Rinderer v. Colvin*, 2015 WL 3636389, at *8 (S.D. Ill. June 11, 2015) (remanding on this issue because the claimant was unrepresented).

The issue is made unnecessarily difficult in this case because the Commissioner, who bears the burden of proof at Step 5, fails to address any of the cases that Goo cites. The government claims instead that the issue is governed by SSR 00-4p. Ruling 00-4p requires an ALJ to "identify and obtain a reasonable explanation for any conflicts between the occupation evidence provided by [the VE] and information in the" DOT. SSR 00-4p. That places an affirmative responsibility on the ALJ to ask whether the VE's testimony complies with the DOT, at least where there is "an apparent unresolved conflict between [the VE's] evidence and the DOT." *Id.* But Plaintiff is not claiming that the ALJ failed to investigate a potential conflict between the VE's testimony and the DOT. She argues that the DOT was uninformative, or at best unreliable, on the issue of whether a significant number of jobs existed in Illinois that she could perform. That was *Browning*'s point: "There is no official source of number of jobs for each job classification in the *Dictionary of Occupational Titles*, and while there are unofficial estimates of jobs in some categories, the vocational experts do not in general, and the vocational expert in this case did not, indicate what those data sources are or vouch for their accuracy." *Browning*, 766 F.3d at 709. The Commissioner's evasion of Plaintiff's argument is troubling. The Seventh Circuit has repeatedly expressed its serious concerns over this issue. The government must begin addressing *Browning*, *Voight*, and other Seventh Circuit rulings head on. It could start

(unlike here) by citing them and explaining why they do not require remand.

Even more troubling, however, is the Commissioner's failure to respond to Goo's final claim. The ALJ assessed Goo's physical RFC as light work. The VE testified at the hearing that all three jobs that she said Goo could carry out matched that assessment. The ALJ accepted that testimony and relied on it in his written decision. Unfortunately, the VE was wrong on each count. The DOT describes an order picker (DOT 922.687-058), a hand packager (DOT 920.587-018), and a spiral binder (DOT 653.685-030) as requiring medium strength. Medium work requires a claimant to be able to lift 50 pounds at a time and to lift or carry up to 25 pounds frequently. The ALJ said that Goo could only lift 20 pounds and carry 10 pounds. 20 C.F.R. § 404.1567(b)&(c). As such, she could not perform any of the jobs the ALJ and VE identified. It goes without saying that substantial evidence does not support an ALJ's decision if the jobs he says the claimant can do require greater strength than the RFC assesses.

The Commissioner's failure even to note that Goo has made this argument automatically waives the issue and requires remand. It is, frankly, puzzling why the government has bothered to defend the ALJ's decision if it did not intend to address Plaintiff's decisive, and quite obvious, point. If the Commissioner thinks that claim is without merit, then she should address it; if the Commissioner believes that Plaintiff is correct, she should seek voluntary remand. Ignoring the claim, however, imposes pointless burdens on the government, wastes the Court's time, and requires the taxpayer to fund additional fees to the claimant's counsel under the statutory fee provisions that govern disability cases.

Plaintiff's motion is granted concerning the ALJ's failure to note that all of the jobs

identified by the VE involve medium, not light, work. Since this case already requires remand, the ALJ shall also account for the Seventh Circuit's concerns regarding the number of jobs that the VE states are available to Goo given her RFC. He is to ensure that the VE provides a valid explanation of the sources that support such job estimates.

### III. <u>Conclusion</u>

For these reasons, the Plaintiff's motion for summary judgment [12] and the Commissioner's cross-motion [19] are both granted in part and denied in part. The Commissioner's decision is remanded to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

ENTER:

_____
Daniel G. Martin
United States Magistrate Judge

DATE: June 28, 2016.